In re Albert J. STOWELL and Sarah
K. Stowell, Debtors.

Benito CARDENAS and Maria De
Jesus Maldonado, Plaintiffs,

v.

Albert J. STOWELL and Sarah K.
Stowell, Defendants.

Bankruptcy No. 88–11334.
Adv. No. 88–1126.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

April 20, 1990.

Harvey D. Caughey, Austin, Tex., for debtors.

Dale Ossip Johnson, Bearden & Johnson, Austin, Tex., for plaintiffs.

## FIRST AMENDED MEMORANDUM OPINION

LARRY E. KELLY, Chief Judge.

On July 6, 1989 this court entered an order granting a Motion For Summary Judgment filed by Benito Cardenas and Maria De Jesus Maldonado (collectively "Plaintiff"). The Debtor–Defendant, Albert J. Stowell, timely filed a Motion For New Trial and/or For Additional Findings of Facts. Plaintiff also filed a timely Motion For Additional Findings of Facts. On October 30, 1989, this Court held an oral hearing on the Motions, and tentatively indicated that the Motions For New Trial and For Additional Findings of Facts would all be denied. However, after a thorough review of the file and the law, this court now has determined to grant Stowell's Motion For New Trial, modify its earlier memorandum opinion and to vacate its earlier Order Granting Plaintiff's Motion For Summary Judgment.[1]

## BACKGROUND FACTS

The factual basis for the Plaintiff's claims against Stowell is a Judgment Nihil Dicit which was signed and entered on December 17, 1987 in cause No. 388,917 styled *Benito Cardenas and Maria De Jesus Maldonado, Plaintiffs versus Albert J. Stowell, Defendant* in the 201st Judicial Court of Travis County, Texas. The state court judgment is a final judgment and is founded upon findings that money was obtained from Plaintiff by the Defendant Stowell by "false pretenses, false representations and/or actual fraud as well as by means of willful and malicious injury to the property of the Plaintiffs." In pertinent part, the state court judgment found that:

1. On or about January 25, 1985 Mr. Stowell and Plaintiffs entered into a contract for deed for a house known locally as 2208 Haskell Street, Austin, Texas.

2. Plaintiffs were native-born citizens of Mexico who could not speak, read or write English and who were unsophisticated in matters of real estate.

3. Mr. Stowell knew that the house he was selling to Plaintiffs had been condemned by the City of Austin and declared uninhabitable.

4. Mr. Stowell represented to Plaintiffs that the house was in good repair and that the fair market value of the house was in excess of $37,000.00.

5. The representations of Defendant and Defendant's business associate, David Rodriguez, as to the character, quality, condition and circumstances of the property were false and were knowingly made to Plaintiffs with the intent of fraudulently inducing Plaintiffs into the sale and purchase of the real property.

6. The property in question was burdened with judgment and tax liens that were not disclosed to Plaintiffs.

7. Plaintiffs relied on these misrepresentations and acted upon them to their detriment in that they (i) paid $7,000.00 for the house, (ii) paid $3,000.00 for repairs and (iii) were never able to occupy the house but had to return it to Mr. Stowell when they could not make the

---

1. The court's earlier opinion appears at 102 B.R. 589 (Bankr.W.D.Tex.1989). See also, *Hall v. SBA*, 695 F.2d 175, 180 (5th Cir.1983) ("Every judge has suffered a change of heart after reaching a tentative decision.")

house habitable to the satisfaction of City of Austin inspectors.

8. The acts of Defendant were unconscionable within the meaning of the Texas Deceptive Trade Practices Act.

9. The acts of Defendant were wilful and with specific intent to fraudulently induce Plaintiffs into the sale and purchase of the property.

10. The foregoing facts as well as all other facts in support of the judgment herein have been established by Plaintiffs not merely by a preponderance of the evidence but by clear and convincing evidence.

Stowell filed this Chapter 7 proceeding on May 5, 1988 and Plaintiffs timely commenced this Adversary Proceeding to obtain a non-dischargeable judgment under 11 U.S.C. § 523(a)(2) and (6). Plaintiffs rely on the doctrine of res judicata or collateral estoppel, request that this court find that the substantive issues have been previously determined in the underlying state court action, and preclude Defendant Stowell from presenting any additional evidence on the issues relevant to the determination of dischargeability.

## ISSUES PRESENTED

1. Whether a state court judgment has res judicata (i.e., claim preclusive) effect in a dischargeability action in federal bankruptcy court.

2. Whether a state court judgment has collateral estoppel (i.e., issue preclusion) effect in a dischargeability action in federal bankruptcy court and, if so, whether the federal or state test for collateral estoppel should be applied.

3. Whether the elements of the appropriate test are met in this case.

4. Whether the Motion For Summary Judgment should be granted.

## DISCUSSION

I. *Contrasting Res Judicata With Collateral Estoppel:*

1.01 Bankruptcy courts are increasingly confronted with the res judicata or collat-

eral estoppel effect, if any, of state court judgments in subsequent bankruptcy proceedings. One commentator has succinctly defined these two concepts:

"Res judicata and collateral estoppel are the two primary devices for insuring the finality of judicial decisions. Res judicata or "claim preclusion" ... prevents relitigation of claims or defenses available to the parties in a prior suit. Collateral estoppel or "issue preclusion" prevents parties from relitigating only those issues actually and necessarily litigated in a prior proceeding." Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy,* 58 American Bankruptcy Law Journal 349, 350 (1985).

1.02 Restatement (Second) of Judgments (1982) deals with the preclusive effects of judgments in civil actions. Its introductory chapter states:

"Preclusive effects refers to limitation on the opportunity in a second action to litigate claims or issues that were litigated, or could have been litigated, in a prior action. In general terms, these limitations include the rules of claim preclusion and issue preclusions ... the rule of claim preclusion ... is that a party ordinarily may not assert a civil claim arising from a transaction with respect to which he has already prosecuted such a claim, whether or not two claims wholly correspond to one another. The rule of issue preclusion, sometimes referred to as collateral estoppel ... is that a party ordinarily may not relitigate an issue that he fully and fairly litigated on a previous occasion." *Restatement (Second) Judgments* (1982), Chapter 1, pg. 1. (hereafter "Restatement").

1.03. Two important U.S. Supreme Court cases also contrast these two concepts:

"In this opinion we use the term 'claim preclusion' to refer to 'res judicata' in a narrow sense, i.e., the preclusive effect of a judgment in foreclosing litigation of matters that should have been raised in an earlier suit. In contrast, we use the term 'issue preclusion' to refer to the effect of a judgment in foreclosing relit-

igation of a matter that has been litigated and decided." See *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56, 63 (1984); see also *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

▇ 1.04. Plaintiffs have argued in part that this Court is bound by the principles of res judicata to find that Stowell's actions determined in the state court judgment to be actual fraud, result in a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2) and (6). This argument is easily disposed of. Res judicata applies only when an attempt is made to twice litigate the same *claim*. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The claim litigated in the state court was based on common law fraud principles and on the Texas Deceptive Trade Practices Act. The claim being litigated in this Adversary Proceeding arises under federal law and will determine the question of whether the judgment debt can be discharged. These are patently not the same claim. The U.S. Supreme Court has also held that res judicata does not apply where a pre-petition state court judgment is *urged* to prove a dischargeability suit before a bankruptcy court:

... [W]e reject respondent's contention that res judicata applies here and we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of respondent's debt.

*Brown v. Felsen*, 442 U.S. 127, 140, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979). This point in Plaintiff's Motion For Summary Judgment is denied.

II. *Application of Collateral Estoppel in Bankruptcy Dischargeability Litigation.*

▇ 2.01. In *Brown,* the Supreme Court distinguished the Application of Collateral Estoppel while expressly leaving open the question of whether or not collateral estoppel would apply in bankruptcy dischargeability litigation.

"This case concerns res judicata only and not the narrower principle of collateral estoppel.... If in the course of adjudicating a state law question, a state court should determine factual issues using standards identical to those of § 17 of the former Bankruptcy Act; similar to § 523 of the present Bankruptcy Code), then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court." *Brown*, 442 U.S. at 139 n. 10, 99 S.Ct. 2213 n. 10.

2.02. Several Circuit opinions have addressed the issue of collateral estoppel in bankruptcy dischargeability litigation. The Ninth Circuit held that, in appropriate circumstances, a prior judgment may be prima facie evidence of the facts contained therein, but it will never be granted issue preclusive effect. *In re Rahm*, 641 F.2d 755, 757 (9th Cir.1981), cert. denied, 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981). Other circuits have found that issue preclusion may be appropriate in some circumstances. For example, the Sixth Circuit held:

"Applying collateral estoppel is logically consistent with the Supreme Court's decision in *Brown* and the exclusive jurisdiction of the bankruptcy court while at the same time encouraging judicial economy ... that Congress intended the bankruptcy court to determine the final result—dischargeability or not—does not require the bankruptcy court to redetermine all the underlying facts ... this court holds that where all the requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues." See, e.g., *Spilman v. Harley*, 656 F.2d 224, 227–28 (6th Cir.1981).

To the effect that a prior judgment may allow issue preclusion in dischargeability litigation provided that traditional tests for preclusion are met, see *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *Lombard v. Axtens*, 739 F.2d 499 (10th Cir.1984).

2.03 The Fifth Circuit has also held that issue preclusion may apply to dischargeability litigation in bankruptcy court. See,

*Matter of Shuler,* 722 F.2d 1253 (5th Cir. 1984); *Matter of Allman,* 735 F.2d 863 (5th Cir.1984); *Matter of Poston,* 735 F.2d 866 (5th Cir.1984). *Shuler,* which cites *Spilman,* indicates that the predominate view is that collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided and found no error where the bankruptcy court applied such principles in determining the dischargeability of a debt represented by a prior state court judgment.

### III. *Which Test to Apply For Collateral Estoppel: Federal or State?*

■ 3.01. An early Fifth Circuit case, *Merrill v. Heller & Co. of Alabama,* 594 F.2d 1064, 1066 n. 1 (5th Cir.1979) stated that "although the cause of action is state created, federal rules of collateral estoppel apply in bankruptcy proceedings."

3.02. The Fifth Circuit decisions in *Shuler, Allman,* and *Poston* apply the federal test, with little analysis, to determine whether issue preclusion is applicable. The test for collateral estoppel was restated in *Shuler* at 1256 n. 2.:

> "The applicability of collateral estoppel thus stated is in accord with the general test for collateral estoppel in this Circuit. This court has stated that the three traditional requirements for the application for the doctrine of collateral estoppel are: (i) the issue to be precluded must be identical to that involved in the prior action, (ii) in the prior action the issue must have been actually litigated, and (iii) the determination made of the issue in the prior action must have been necessary to the resulting judgment." Citing, *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 151 (5th Cir.1981).

3.03. The use of the federal test for issue preclusion in dischargeability cases has come under question in recent years. *See* e.g., *In re Wagner,* 79 B.R. 1016

(Bankr.W.D.Wis.1987); *In re Manuel,* 76 B.R. 105 (Bankr.E.D.Mich.1987); *In re All American of Ashburn, Inc.,* 56 B.R. 186 (Bankr.N.D.Ga.1986); *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich.1985); *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985). The *Byard* case most succinctly states the reason for the debate:

> *Spilman* was decided by the Sixth Circuit before the developments in the law of full faith and credit signaled by the Supreme Court in *Kremer, Migra, McDonald* and *Marrese.* In the opinion of this writer, were the Sixth Circuit to now consider the issues presented in *Spilman,* the court would approach the collateral estoppel issue differently. *Marrese,* the most recent Supreme Court case addressing § 1738, illustrates how federal courts must determine the preclusive effect of state court judgments. *Byard,* supra at 705.

3.04 Section 1738 referred to in *Byard* refers to 28 U.S.C. § 1738.[2] The Supreme Court cases referred to in *Byard* clarified the requirements imposed on federal courts by the full faith and credit statute. *Migra* states that:

> "It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. (citations omitted). Indeed, the federal courts may look to the common law or to the policy supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other state courts, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so ..."

*Migra* 465 U.S. at 81, 104 S.Ct. at 896.

3.05. This principle was restated in *Kremer v. Chemical Construction Co.,*

---

**2.** In pertinent part 28 U.S.C. § 1738 provides "the records and *judicial proceedings* of any court of any such state ... shall be ... admitted in other courts within the United States and its territories and possessions by the attestation of the clerk ... such ... judicial proceedings ... shall have the same full faith and credit in every

court within the United States and its territories and possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." This statute is sometime referred to as the full faith and credit statute.

456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

"Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which those judgments emerged."

*Id.* at 466, 102 S.Ct. at 1889.

3.06. In *Marrese v. American Academy of Orthopaedic Surgery,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) the court, referring to the full faith and credit statute said that it "... directs a federal court to refer to the preclusion law of the state in which the judgment was rendered ...". *Marrese* at 380, 105 S.Ct. at 1332. *Marrese* further observed that the court's decision in *Kremer* "... implies that absent an exception to § 1738, state law determines at least the issue preclusive effect of a prior state court judgment in subsequent action involving a claim within the exclusive jurisdiction of the federal courts." *Marrese* at 380, 105 S.Ct. at 1332.

3.07. The test which *Marrese* requires then is a two-step analysis. The federal court is first required to look to state preclusion law in determining the preclusive effect of a prior state court judgment. If a preclusive effect would be given, then the federal court must determine if any exception to § 1738 applies. Essentially, if preclusion would apply under state law, the federal court then looks at the federal law at issue to see if it expressly or impliedly repeals § 1738, so that the federal court would not be bound to follow the state rule. See, *Kremer* at 468, 102 S.Ct. at 1890.

3.08. The argument that the full faith and credit statute required the federal court to apply the substantive law of the state was not directly addressed in *Brown* or *Spilman.* It was however addressed in *Shuler:*

"[Appellant] also contends that the bankruptcy court failed to give 'full faith and credit' to the judgment of the state court as required by 28 U.S.C. § 1738, ... the full faith and credit due a state court judgment is of course manifested by the res judicata or collateral estoppel effect

accorded to that judgment. (citations omitted). Where, as in bankruptcy, the res judicata or collateral estoppel effect of state court judgments has been limited by competing federal interests, see *Brown v. Felsen,* supra, 442 U.S. at 136–37, 99 S.Ct. at 2211–12, the full faith and credit owing to the state court judgment may be correspondingly limited. Since the courts below properly assess the collateral estoppel effect of the state court judgment in the present federal bankruptcy case, the full faith and credit principles of § 1738 have not been violated." *Shuler* at 1258, n. 10.

3.09. In *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980) the court, adopting the language of the district court, in dictum stated:

"... a bankruptcy court faced with a claim of non-dischargeability ... and presented with a state court judgment evidencing a debt *is not bound by the judgment and is not barred by res judicata or collateral estoppel* from conducting its own inquiry into the character and ultimately the dischargeability of the debt. Like the Ninth Circuit in *In re Houtman,* 568 F.2d 651 (9th Cir.1978), this court would be constrained to reverse the bankruptcy court's decision if the bankruptcy judge had held himself to be bound by the state court judgment ...". *Carey* at 377, emphasis added.

3.10. It appears that the Fifth Circuit felt under the federal standards for issue preclusion, it did not need to fully apply the state standards in assessing the preclusive effect of the prior state court judgment. It is also possible that one could read footnote 10 in *Shuler* to find that the Circuit believes § 1738 is repealed because of the exclusive power granted to federal bankruptcy courts to determine issues such as dischargeability. In any event, this court is convinced that the first part of any preclusion analysis now requires it to look to state law in determining the effect of the prior state court judgment. If collateral estoppel is found to be applicable under state law, then the second part of the *Marrese* analysis requires this court to de-

termine if there has been any expressed or implied repeal of § 1738.

## IV. *Marrese Analysis—Part I*

### A. Texas Test For Collateral Estoppel.

4.01. The Texas Supreme Court has had several occasions through the years to define the elements of issue preclusion. A party seeking to invoke the doctrine of collateral estoppel or issue preclusion must establish:

"(1) The facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) citing *Benson v. Wanda Petroleum Corp.*, 468 S.W.2d 361 (Tex.1971) and Restatement (Second) Judgments § 27.[3]

This doctrine has been further described in a subsequent Texas Supreme Court decision:

"Collateral estoppel, or issue preclusion, is more narrow than res judicata in that it only precludes the relitigation of identical issues of facts or law that were actually litigated and essential to the judgment in a prior suit. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties."

See *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985), citing *Bonniwell*, supra; *Wilhite v. Adams*, 640 S.W.2d 875 (Tex.1982) and Restatement (Second) Judgments § 27 (1982).

"Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment." *Van Dyke* at 384.

Other Texas Supreme Court decisions following Restatement (Second) Judgments

§ 27 include *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1 (Tex.1986); *Tarter v. Metropolitan Savings and Loan Association*, 744 S.W.2d 926 (Tex.1988); and *Texas Real Estate Commission v. Nagle*, 767 S.W.2d 691 (Tex.1989).

4.02. Case law in Texas also addresses the procedures involved where collateral estoppel is raised:

a. Texas courts follow Restatement § 27 in determining when to allow issue preclusion. See, *Bonniwell*, supra; *Van Dyke*, supra; *Texas Real Estate Commission*, supra; and *Acker v. City of Huntsville*, 787 S.W.2d 79 (Tex.App.— Huntsville, 14th Dist.1990).

b. The burden of proof is on the party seeking the application of collateral estoppel to present sufficient evidence that the doctrine should apply. See, e.g., *Scurlock Oil Co. v. Smithwick* on rehearing, 787 S.W.2d 560 (Tex.App.—Corpus Christi, 1990); *Traweek v. Larkin*, 708 S.W.2d 942, 945 (Tex.App.—Tyler 1986, writ ref'd n.r.e.); and *City of Houston v. Houston Chronicle Publishing Co.*, 673 S.W.2d 316, 321 (Tex.App.— Houston, 1st Dist.1984, no writ).

c. The doctrine of collateral estoppel applies only to the "ultimate issues" which are actually and necessarily decided. In *Tarter* the Texas Supreme Court defined what an ultimate issue is:

"Ultimate issues are those factual determinations submitted to a jury that are necessary to form the basis of a judgment. (Citations omitted) The term 'ultimate issue' does not refer to a cause of action or claim. (Citations omitted)" *Tarter*, supra at 928.

See also, *Dent v. Federal Sign and Signal Corp.*, 773 S.W.2d 599, 601 (Tex.App. —Dallas, 1989, no writ); *Acker*, supra (citing the comments to Restatement § 27.)

d. The party asserting collateral estoppel must introduce into evidence the judgment and pleadings from the prior

---

**3.** Section 27 of the Restatement is entitled Issue Preclusion—General Rule. The Rule states: "when an issue of fact or law is actually litigated and determined by a valid and final judg-

ment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."

suit or the doctrine will not apply. *Traweek*, supra at 945; *City of Houston*, supra at 321.

4.03. Two key elements of the Texas test for collateral estoppel were challenged by Stowell in his opposition to Plaintiffs' Motion For Summary Judgment. The first is that the issues were not "actually litigated". The second is that the issues were not proven by "clear and convincing evidence".

### B. Actually Litigated

■ 4.04. Were the issues "actually litigated?" In *Shuler* and in *Poston* the Fifth Circuit did not reach the issue of whether a default judgment met the "actually litigated" test for collateral estoppel. *Shuler* at 1257, n. 6; *Poston* at 870, n. 3. None of the Texas cases cited in this opinion directly reached this issue either because none of the underlying trial court judgments were based on defaults.

4.05. It is instructive however to see that the Texas decisions not only rely on § 27 of the Restatement as the Texas test for collateral estoppel, but also look to the official comments to the Restatement in their attempt to apply the law to the facts of each particular case. See, e.g., *Van Dyke* at 384–385 (comment "d" and "h to Restatement § 27); *Tarter* at 928 (comment "h" to Restatement § 27); and *Acker*, 787 S.W.2d at 81 (comment "i" and "j" to Restatement § 27).

4.06. When other sections of the Restatement are used by the Texas courts they also evidence a reliance on the official comments. See, e.g., *Scurlock* 724 S.W.2d at 6 (comment "f" to Restatement § 13); *Van Dyke* at 385 (comment "g" to Restatement § 13).

4.07. Restatement § 27 in comment (e), entitled "Issues Not Actually Litigated" states in pertinent part:

"A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular ac-

tion. The action may involve so small an amount that litigation of the issue may cost more than the value of the law suit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interest of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

It is true that it is sometime difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly ...

*In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.* Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues if the parties have entered an agreement manifesting such an intention." (emphasis added).

4.08. In light of Texas authority which conclusively adopts Restatement § 27 as the Texas rule for issue preclusion and the Texas courts reliance on the comments to § 27 of the Restatement, this court is persuaded that default judgments and Nihil Dicit Judgments do not present ultimate issues that were "actually litigated". This court further believes that the Fifth Circuit, upon reconsideration of this issue in light of the full faith and credit statute and the *Migra* and *Marrese* decisions, if con-

fronted with a default or Nihil Dicit Judgment, would follow this view.

### C. Burden of Proof

▇ 4.09. Stowell's second objection went to the burden of proof issue. The real dispute here is Stowells contention that the trial court finding that issues were proven by "clear and convincing evidence" was not necessary to its decision. The general rule in Texas is that issues tried by a state court in a civil proceeding need only to be proven by a preponderance of the credible evidence standard. 35 Tex.Jur. 3rd, Evidence, § 105 (see cases cited in n. 61) (1984). Because Stowell asserts that the burden of proof in dischargeability litigation, at least under Code § 523(a)(2)(A) and (a)(6) is by a clear and convincing standard, it is asserted that the difference in burden of proof means that the federal bankruptcy court should not afford any of the state court findings preclusive effect.

4.10. The question of whether the standard of proof in § 523 actions is "by clear and convincing evidence" or by a mere "preponderance of the evidence" has been a matter of concern for this Court for some time. Many courts hold that the higher standard applies.[4] Other courts have recently held in well reasoned opinions, which are convincing to this Court, that a preponderance standard of proof is appropriate and that the requirement of "clear and convincing evidence" is unwarranted judicial gloss. See e.g. *In re Watkins*, 90 B.R. 848 (Bankr.E.D.Mich.1988); *In re Dubian*, 77 B.R. 332 (Bankr.D.Mass.1987). Although *Dubian* has been overturned by the District Court in an unreported opinion, based on other authorities, that does not lessen this court's belief that *Dubian's* reasoning is sound.

4.11. Courts have often used loose language in describing the standard of proof they require. See, 37 Am.Jur.2d, Fraud and Deceit § 468 which states that many authorities approve the view that fraud may be proved in a civil case by a preponderance of the evidence but that other courts use phrases such as "clear and satisfactory", "clear and convincing," "clear, satisfactory and convincing" and "clear, precise and indubitable." In all, thirty-four variations of the clear and convincing "standard" are listed. As pointed out by the editors of AM JUR:

The variety in the various expressions above noted which purport to state the degree of proof necessary to establish fraud renders them far from satisfactory in establishing any workable rule. Moreover, the use of such expressions is subject to the criticism that it creates a departure from the general rule above stated that the issues in civil cases are determined according to the preponderance of the evidence.[5]

▇ Many courts apply the standard of proof with very little analysis or discussion. Bankruptcy courts have applied the "clear and convincing" standard of proof fairly consistently, apparently based on the maxims:

(1) "exceptions to discharge should be literally and strictly construed against the creditor and liberally in favor of the debtor." *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1878); 3 Collier on Bankruptcy, ¶ 523.05 (15th ed.1988); and

(2) "public policy underlying the Code favors a fresh start for the honest debtor." *In re Powell*, 88 B.R. 114, 118 (Bankr.W.D.Tex.1988), citing *Maynard v. Elliott*, 283 U.S. 273, 277, 51 S.Ct. 390, 392, 75 L.Ed. 1028 (1931) and *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–114, 27 L.Ed.2d 124 (1970).

However, as pointed out in *In re Powell*: "yet it is that very honesty which is called into question in dischargeability [§ 523] and discharge [§ 727] cases. The higher standard of proof tends to presume the very issue in question, namely the debtor's honesty." *In re Powell*, 88 B.R. 114 (Bankr.W.D.Tx.1988).

4.12. The question of the proper standard of proof in dischargeability cases is

---

4. See Appendix A attached to this court's earlier opinion found at 102 B.R. 589, 598–99 (Bankr. W.D.Tex.1989).

5. 37 Am.Jur.2d, Fraud and Deceit § 468, p. 645.

further muddied by the fact that many bankruptcy courts have found it convenient to avoid the question. When courts have decided in favor of the defendant/debtor they frequently state that the plaintiff has failed to prove its case by even a preponderance of the evidence. When they have decided in favor of the plaintiff/creditor they often say that the case was proved by clear and convincing evidence. See, e.g., *In re Watkins*, 90 B.R. 848, 851 n. 7 (Bankr.E.D.Mich.1988).

"Most courts, I surmise, do what the Court in *In re Horldt*, 86 B.R. 823 (E.D. Pa.1988) did and 'punt.' They merely avoid the issue by saying that the plaintiff has failed to meet even the lower standard. Until now that is precisely what I have been able to do."

4.13. One reason that it has become more important to face this question squarely is the increasing frequency with which bankruptcy courts are asked to decide whether issue preclusion applies in dischargeability actions.

4.14. Texas bankruptcy judges have confronted this same problem. See, e.g., *In re Church*, 69 B.R. 425 (Bankr.N.D.Tex. 1987); *In re McDonald*, 73 B.R. 877 (Bankr.N.D.Tex.1987) (J. Abramson applying "clear and convincing" standard); and *In re Nix*, 92 B.R. 164 (Bankr.N.D.Tex. 1988) ("... various bankruptcy courts [and one Circuit court] considering the burden of proof have concluded that in the absence of an express requirement in the state for a 'clear and convincing' standard, the burden of proof for a § 523(a)(6) claim is 'preponderance of the evidence.'" (citations omitted).

4.15. In view of (i) the importance of the resolution of the question of the proper standard of proof in dischargeability and discharge cases, (ii) the shaky analytical underpinnings of the "clear and convincing" standard, (iii) recent Supreme Court cases which have disavowed the "clear and convincing" standard in analogous statutory fraud cases, see e.g. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) and (iv) the

persuasive criticism of this standard by some of our colleagues on the bench,[6] we refuse to "punt" and now hold that the standard of proof required in a § 523(a)(2)(A) case *and* the standard of proof required in a § 523(a)(6) case is "preponderance of the evidence."

## V. *Marrese Analysis—Part II*

█ 5.01 Where the state law is found to give preclusive effect to a judgment, the second part of the *Marrese* analysis requires the federal court to see if some federal policy exists which demands a different federal rule.

5.02 *Byard* found nothing in the Bankruptcy Code or Congressional Statements of intent pertaining to dischargeability provisions to indicate that the state rule of collateral estoppel would not apply in bankruptcy dischargeability litigation. *Byard* at 707.

5.03 To the contrary, the bankruptcy court in Tennessee concluded that there is substantial federal justification for an exception to § 1738. See, *In re Hall*, 95 B.R. 553, 555–558 (Bankr.E.D.Tenn.1989). In so doing, the federal court would, according to Hall, follow the predominant view expressed in *Spilman:*

"If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court. (citations omitted)". *Spilman* at 228.

5.04. The *Carey Lumber Company* decision and the comment in *Shuler* at 1258, n. 10 could indicate that the Fifth Circuit would not apply the state rule for issue preclusion when bankruptcy dischargeability litigation is involved. *Hall* presents a well reasoned case for finding and exception to § 1738. *Hall* at 555–558. This court's ruling would not be affected however because it believes that the Fifth Circuit would, when the issue is squarely addressed, follow the *Spilman* analysis of default judgments. See, e.g., *Shuler* at 1257, n. 6; *Poston* at 870, n. 3.

6. *In re Dubian,* supra; *In re Powell,* supra; *In re*     *Watkins,* supra.

## CONCLUSION

The issues decided in the underlying state court judgment were not "actually litigated." Since they were not actually litigated they would not be afforded issue preclusive effect under Texas law and will not be afforded the effect of issue preclusion in this proceeding. The Plaintiffs' Motion For Summary Judgment will therefore be denied.

A separate Order of even date herewith will be entered in conformity with this Amended Memorandum Opinion.

## AMENDED ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This matter originally came on to be considered by the Court on or about September 14, 1988. The Court filed a Memorandum Opinion which is recited in 102 B.R. 589 (Bankr.W.D.Tex.1989). Timely Motions For New Trial and Additional Findings of Facts were filed by the parties and an oral hearing held on or about October 30, 1989. This court has now determined that the Motion For New Trial by the Debtor–Defendant Albert J. Stowell should be granted, this court's earlier Memorandum Opinion modified and its earlier Order Granting Motion for Summary Judgment vacated.

The Findings of Fact and Conclusions of law in the Amended Memorandum Opinion are hereby incorporated for all purposes. This court concludes that this is a core proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(I).

Based upon this court's Amended Memorandum Opinion and the Findings of Facts and Conclusions of Law contained therein it has determined that the underlying state court judgment in favor of Benito Cardenas and Maria De Jesus Maldonado against Albert J. Stowell, Defendant is not entitled to preclusive effect in this Adversary Proceeding. The court has therefore determined that the Motion For Summary Judgment filed by Benito Cardenas and Maria De Jesus Maldonado, relying solely upon the issue preclusive effect of the findings of the underlying state court judgment should be denied.

IT IS THEREFORE ORDERED that the Motion For Summary Judgment of the Plaintiffs is DENIED; and

IT IS FURTHER ORDERED that an Amended Scheduling Order setting this matter for trial will be sent out by separate order of the court.

IT IS SO ORDERED.