**In re Glenn TURNER, Debtor.**

**Inez THOMPSON, Guardian and on Behalf of Juanita SNELL, Plaintiff,**

**v.**

**Glenn E. TURNER, Defendant.**

**Bankruptcy No. 90–40082.
Adv. No. 90–4054.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

July 10, 1992.

---

Gary Joseph Derer, Celina, Tex., for defendant.

Tamara Lynn Farris, Perry J. Cockerell, Cantey & Hanger, Fort Worth, Tex., for plaintiff.

## MEMORANDUM OPINION ON DENIAL OF INEZ THOMPSON'S MOTION FOR SUMMARY JUDGMENT

C. HOUSTON ABEL, Chief Judge.

Inez Thompson challenges the dischargeability of claims against Glenn Turner, and she seeks summary judgment. She contends the court should give issue preclusive effect to a state court default judgment.

Before the Supreme Court determined the evidentiary standard for dischargeability actions was a preponderance of the evidence, *Grogan v. Garner,* —— U.S. ——, —— - ——, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991), some bankruptcy courts declined to give issue preclusive effect to state court judgments on the basis that dischargeability actions were subject to the clear and convincing standard. After *Grogan,* issue preclusion has gained new importance for bankruptcy courts. Few bankruptcy courts have addressed whether a default judgment meets the actually litigated prong of the issue preclusion test.

That is the issue presented in this case, and the court concludes that under Texas law default judgments do not meet that requirement. The motion for summary judgment, therefore, is denied.

## JURISDICTION

Under 28 U.S.C. sec. 1334, 28 U.S.C. sec. 157(a), and the standing order of reference, this court has jurisdiction over Glenn Turner's bankruptcy case. This matter is a core proceeding requiring a determination of dischargeability. 28 U.S.C. sec. 157(b)(2)(J).

## BACKGROUND

Inez Thompson ("Thompson"), as the guardian for Juanita Snell, seeks summary judgment based on issue preclusion. Before this bankruptcy proceeding was filed, Thompson obtained a default judgment against Glenn Turner ("Turner") in state court. In the state court proceeding, Thompson alleged Turner had committed fraud. Although Turner appeared in the state court proceeding, there is no showing that he participated in discovery or other aspects of the litigation. He ultimately was severed from the state court proceeding because he filed bankruptcy, and the automatic stay prevented further proceedings against him. This first bankruptcy case was dismissed without prejudice for failure to file required documents. After the dismissal of the bankruptcy case, the state court judge proceeded with the severed case. Because Turner did not participate, the court entered default judgment against him. Turner subsequently filed a second bankruptcy case, which is the case pending before this court.

Although the state court judgment was obtained by default, Thompson contends summary judgment is appropriate because the state court adopted and relied upon evidence presented during a trial against other defendants and because the state court found the first bankruptcy proceeding was filed fraudulently to delay the state court litigation. In her non-dischargeability complaint Thompson alleged that Turner should be denied discharge of her debt under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6). 11 U.S.C. sec. 523(a)(2)(A), (4), (6). She now contends that summary judgment is appropriate on each of these grounds. The summary judgment motion was served over ten days before the hearing, Fed.R.Bankr.Proc. 7056(c), and Glenn E. Turner ("Debtor") responded and appeared at the hearing on the motion.

## SUMMARY JUDGMENT

Under Rule 56(c), made applicable in bankruptcy through Bankrutpcy Rule 7056, summary judgment should only be entered when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Bankr.Proc. 7056(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

Once the movant presents a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. When considering a motion for summary judgment, the judge is not to weigh the evidence or make credibility determinations. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. The court must make all factual inferences in favor of the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

## APPLICATION OF SUMMARY JUDGMENT STANDARDS TO FACTS OF THIS CASE

The evidentiary standard that applies at trial also applies at the summary judgment stage. *Anderson,* 477 U.S. at

254, 106 S.Ct. at 2513. In *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court established that the evidentiary standard in section 523(a) actions is a preponderance of the evidence. *Grogan*, —— U.S. at —— - ——, 111 S.Ct. at 659–61. Exceptions to discharge are narrowly construed for the debtor and against the creditor because exceptions are contrary to the very purpose of bankruptcy, which is to give the debtor a fresh start. As the state court applied a preponderance standard, Thompson must demonstrate that the state court judgment was based on findings that demonstrate each element of her dischargeability allegations.

### Should the Court Apply the Federal or State Test for Issue Preclusion?

 Issue preclusion, or collateral estoppel, stems from the "full faith and credit" requirement that has been codified as 28 U.S.C. sec. 1738. The proper analysis of whether state or federal standards for issue preclusion apply in bankruptcy dischargeability cases is explained in *Cardenas v. Stowell (In re Stowell)*, 113 B.R. 322 (Bankr.W.D.Tex.1990) [hereinafter *Stowell 2*]. As the *Stowell 2* court noted, in *Marrese v. American Academy of Orthopaedic Surgery*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), the Supreme Court held that federal courts must first consider state preclusion law. *Marrese*, 470 U.S. at 380–81, 105 S.Ct. at 1331–32. If state law would preclude a claim, then the court must determine whether an exception to the full faith and credit statute exists. *Stowell 2*, 113 B.R. at 327. Although the Fifth Circuit has not expressly addressed which law applies since *Marrese*, this court agrees with the *Stowell 2* court's conclusion that the Fifth Circuit would apply the appropriate state's law. *Stowell 2*, 113 B.R. at 329–330. The court thus turns to Texas law.

### Applicable Standards for Issue Preclusion Under Texas Law

 For issue preclusion to apply under Texas law Thompson must show:

1. The facts involved were "fairly and fully litigated";

2. The facts were essential to the prior litigation; and

3. The parties were adversaries in the prior litigation.

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) (citing *Benson v. Wanda Petroleum Corp.*, 468 S.W.2d 361 (Tex.1971) and *Restatement (Second) Judgments* sec. 27). To meet the fairly and fully litigated requirement, an issue must be actually litigated. *See Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985) (citing *Bonniwell*, 663 S.W.2d at 818) ("[o]nce an actually litigated and essential issue is determined, that issue is conclusive in a subsequent suit between the same parties.")

When evaluating which law to apply, the test for issue preclusion is less problematic than the application of the test. The vast majority of courts have adopted requirements similar to the ones set forth in the *Restatement (Second) of Judgments*, and the federal test that the Fifth Circuit applied before *Marrese* echoes the Texas test.[1] The courts, however, have disagreed when applying the factors. Specifically, with regard to the issue presented in this case, the courts have split on whether default judgments meet the actually litigated prong of the test. *Compare Napshin v. Goetz (In re Goetz)*, 134 B.R. 367, 368 (Bankr.W.D.Mo.1991) (default judgment does not meet actually litigated requirement) *with Michigan Nat'l Bank v. Express Micro Mart, Inc. (In re Express Micro Mart, Inc.)*, 139 B.R. 639, 642 (Bankr. E.D.Mich.1992) (default judgment is actually litigated under Michigan law).

---

1. In *In re Shuler*, 722 F.2d 1253 (5th Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984), the Fifth Circuit said the test was: (1) the issue must be identical to the issue in the prior action; (2) in the prior action the issue must have been actually litigated, and (3) the determination must have been necessary to the resulting judgment. *Shuler*, 722 F.2d at 1256 n. 2 (citing *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 151 (5th Cir.1981)).

*Distinguishing Texas Case Law Giving Claim Preclusive Effect to Default Judgments*

Before addressing whether default judgments are actually litigated under Texas law, it is important to distinguish issue preclusion, which is involved in this case, from claim preclusion or *res judicata*. The *Restatement (Second)* provides, "[w]hen a *valid and final personal judgment* is rendered in favor of a plaintiff ... [i]n an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." *Restatement (Second)*, sec. 18 (emphasis added). The *Restatement (Second)* distinguishes a "valid and final personal judgment" from a judgment on the merits of the case because "by statute, rule, or court decision, judgments not passing directly on the substance of the claims have come to operate as a bar." *Restatement (Second)*, sec. 19, comment a. Under the *Restatement (Second)* view a default judgment would be given claim preclusive effect.

This case does not involve claim preclusion. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court, noting that dischargeability was a question of federal bankruptcy law, established that bankruptcy courts were not barred under the doctrine of *res judicata* from deciding bankruptcy dischargeability issues. *Felsen*, 442 U.S. at 138–39, 99 S.Ct. at 2212–13. "While Congress did not expressly confront the problem created by prebankruptcy state-court adjudications, it would be inconsistent with the philosophy of the 1970 amendments to adopt a policy of res judicata which takes these section 17 [Bankruptcy Act dischargeability] questions away from bankruptcy court and forces them back into state court." *Felsen*, 442 U.S. at 136, 99 S.Ct. at 2211. The Supreme Court noted that issue preclusion might prevent a dischargeability action if the requirements of issue preclusion were met. *Felsen*, 442 U.S. at 136, n. 10, 99 S.Ct. at 2211, n. 10. As Thompson may properly invoke issue preclusion upon a showing that its requirements are met, the court now considers whether Texas courts would find that default judgments are actually litigated.

*Would a Texas Court Conclude That a Default Judgment Was Actually Litigated?*

Thompson contends this court should give the state court judgment preclusive effect and relies upon *Stowell v. Cardenas (In re Stowell)*, 102 B.R. 589 (Bankr.W.D.Tex.1989) [hereinafter *Stowell 1*]. The facts underlying *Stowell* are similar to those of this case because the plaintiffs had a state court judgment for common law fraud and deceptive trade practices. They sought to have the bankruptcy judge enter summary judgment on section 523(a)(2)(A) and section 523(a)(6) claims. *Stowell 1*, 102 B.R. at 595. Initially, the court held that the issues had been actually litigated, *Stowell 1*, 102 B.R. at 595, but the court ultimately vacated its order and denied summary judgment, holding that default judgments do not meet the "actually litigated" prong of the Texas issue preclusion test. *Stowell 2*, 113 B.R. at 332.

When evaluating whether Texas courts would find that default judgments were actually litigated, the *Stowell 2* court found no Texas precedent directly on point. Recognizing that Texas authorities, including the Texas Supreme Court, expressly relied upon the *Restatement (Second) of Judgments*, the *Stowell 2* court then looked to the *Restatement (Second)* for guidance on the actually litigated prong of the issue preclusion test.

In section 27, the section addressing "Issues Not Actually Litigated," the comments contain this explanation: "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.... The judgment may be conclusive, however, with respect to one or more issues if the parties have entered an agreement manifesting such an intention." *Restatement (Second)*, sec. 27, comment e. While the Texas Supreme Court has not adopted this particular comment, the court expressly adopted section 27 and other portions of the comments to section 27. *E.g. VanDyke v. Boswell, O'Toole,*

*Davis and Pickering*, 697 S.W.2d 381, 384 (Tex.1985) (adopting comments d and h); *see Stowell 2*, 113 B.R. at 329 (listing case law adopting section 27 and comments).

On initial reading, the Amarillo court of appeals appears to deviate from the *Restatement (Second)* analysis of the actually litigated requirement in *Mendez v. Haynes Brinkley & Co.*, 705 S.W.2d 242 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.). This court could construe the *Mendez* decision as being inconsistent with what it believes the Texas Supreme Court would do,[2] but that construction is not necessary because a careful reading of the *Mendez* case demonstrates that it follows the *Restatement (Second)* and Texas precedent.

In *Mendez*, the court applied offensive collateral estoppel to a default judgment. *Mendez*, 705 S.W.2d at 246. The court held that an insurance carrier was bound by the default judgment obtained against its insurance recording agent. *Mendez*, 705 S.W.2d at 246. Although the court did not expressly discuss how the default judgment was obtained, it appears the parties agreed to it. It is clear that the agent had been involved in discovery and litigation before the default judgment was entered against him. *Mendez*, 705 S.W.2d at 245. The *Mendez* case demonstrates the exception contemplated in the *Restatement (Second)*.

That exception does not apply to the facts of the case pending in this court, and this court agrees with the *Stowell 2* court's conclusion that default judgments usually do not meet the "actually litigated" prong of the Texas issue preclusion test. As the state courts would not give the default judgment issue preclusive effect, it is unnecessary for the court to determine if an exception to the full faith and credit statute exists.

### *Does* Lacy v. Dorsey (In re Lacy) *Compel A Different Result?*

Had it not been for some disconcerting language in a Fifth Circuit case decided after *Stowell*, the court would have found

it unnecessary to revisit the actually litigated question. After *Stowell 2* was decided, the Fifth Circuit issued *Lacy v. Dorsey (In re Lacy)*, 947 F.2d 1276 (5th Cir.1991) (per curiam). In *Lacy*, the Fifth Circuit stated, "in *In re Shuler*, 722 F.2d 1253, 1258 (5th Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984), we held that where the record of the state proceeding reflects 'specific false pretense conduct, by which the federal bankruptcy court might determine the creditor's claim for nondischargeability, measured by federal bankruptcy standards' collateral estoppel can be applied to a default judgment." *Lacy*, 947 F.2d at 1277. This language implies that if a party presents evidence which the state court incorporates into its findings on the default judgment, then the issue has been actually litigated.

While the *Lacy* court appears to reach a conclusion contrary to that of this court and the *Stowell 2* court, the language in *Lacy* is not binding for three reasons. First, the language in *Lacy* is *dicta*. Second, the language overbroadly states the holding of *Shuler*. Third, the *Shuler* case was decided before the Supreme Court decided *Marrese*, and the *Shuler* court applied federal law of issue preclusion rather than state law.

### *The language in* Lacy *is dicta:*

In *Lacy* the Fifth Circuit held that a stipulation of facts and an agreed judgment from a state court proceeding could be given issue preclusive effect in bankruptcy dischargeability cases. *Lacy*, 947 F.2d at 1277. As both parties were involved in the stipulation and agreed judgment, the Fifth Circuit did not address whether default judgments meet the actually litigated prong of the test for issue preclusion. Although the court mentions the default judgment issue, that language is *dicta*.

### *In* Shuler *the Fifth Circuit declined to decide whether default judgments were actually litigated.*

Moreover, the *Shuler* case which the Fifth Circuit cites did not hold that it is

---

**2.** *See Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (lower state court decisions to be given

some weight but not binding if state supreme court has not decided issue).

proper to give issue preclusive effect to a default judgment. Rather, the *Shuler* court affirmed the bankruptcy court's denial of summary judgment because the facts underlying the state court default judgment failed to meet the requirements of the test for issue preclusion. *Shuler*, 722 F.2d at 1257. The *Shuler* court emphasized,

> [h]aving determined as a threshold matter that the state proceedings here cannot factually be accorded collateral estoppel effect, the bankruptcy court did not reach, nor do we, the further issue of whether a default judgment meets the 'actually litigated' test for collateral estoppel for bankruptcy dischargeability determinations. According to *Spilman v. Harley* [, 656 F.2d 224 (6th Cir.1981) ] the preponderant view (citing decisions) is that a default judgment does not through collateral estoppel bar relitigation in the bankruptcy court. *Franks v. Thomason, supra,* 4 B.R. [814,] at 821.

*Shuler,* 722 F.2d at 1257, n. 6.

A comparison of the language in *Shuler* with the quotation in *Lacy* court opinion shows the *Lacy* court stated the conclusion of *Shuler* in the affirmative. *Compare Shuler,* 722 F.2d at 1258 *with Lacy,* 947 F.2d at 1277. That affirmative proposition is that summary judgment should be granted if the facts of a default judgment support issue preclusion. In the factual context of the *Lacy* case, the language about default judgments is consistent with the *Restatement (Second).* The *Lacy* case discussed default judgment in the context of holding that an agreed judgment should be given issue preclusive effect. As indicated in the *Restatement (Second)* comment, a default judgment might meet the actually litigated prong if there were an agreement demonstrating an intent to give the default judgment issue preclusive effect. That situation will occur only in a minuscule number of default judgment cases, and it was not the situation in *Shuler.* To the extent the *Lacy* opinion indicates a plaintiff may put on factual evidence, get findings from the trial court, receive a default judgment, and then seek issue preclusion, that impli-

cation is inconsistent with the comments in *Shuler.*

*The case cited in* Lacy *applied the federal standards for issue preclusion.*

Finally and most importantly, *Shuler* was decided before *Marrese,* and the *Shuler* court applied federal law rather than state law. The *Lacy* court did not set forth the elements of issue preclusion and did not address whether the question was one of state or federal law. Under the full faith and credit statute, the relevant standard for this court to apply is established by Texas law rather than Fifth Circuit precedent.

## OFFENSIVE COLLATERAL ESTOPPEL

The court also has considered whether offensive collateral estoppel, or issue preclusion, might apply on the facts of this case. The state court judge did not expressly rely upon offensive collateral estoppel, nor would it be proper for this court to do so. This is because the debtor filed bankruptcy and was severed from the action against the other defendants. The severance and the imposition of the automatic stay prevented the issue from being determined as to Turner, and Texas courts would not apply offensive collateral estoppel. *See VanDyke,* 697 S.W.2d at 384–85 (Tex.1985) (refusing to apply collateral estoppel when separate trials on claim and counter-claim had been ordered). To apply offensive collateral estoppel under the facts of this case would undermine the effect and purpose of the automatic stay.

## CONCLUSION

As established by the Supreme Court in *Marrese,* this court must look to Texas law when considering whether to give issue preclusive effect to a default judgment. Although Texas courts have not expressly addressed the issue, the court concludes that Texas courts would hold that default judgments are not actually litigated. The court denies Thompson's motion for summary judgment.