**In re Dale Richard LIMBAUGH, dba Limbaugh Construction, and Forwins Construction, and Linda Joyce Limbaugh, aka Linda Keller Limbaugh, Linda Keller Crain, and Linda Joyce Crain, Debtors.**

**Raymond CRAIN, Plaintiff,**

v.

**Linda LIMBAUGH, Defendant.**

**Bankruptcy No. 392–37298 RCM–7. Adv. No. 392–3754.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 5, 1993.

Jack A. Moffitt, Jr., Dallas, TX, for plaintiff.

Frank H. Hagle, Jr., Grand Prairie, TX, for defendant.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

Pursuant to Bankruptcy Rule 7052, the following are the Court's Findings of Fact and Conclusions of Law in connection with the hearing held in the above-referenced adversary proceeding on March 26, 1993. This case addresses whether a state court default judgment entered as a sanction for discovery abuse is entitled to issue preclusive effect in a bankruptcy dischargeability context. Initially, the Court granted the summary judgment; however, it later vacated its order to pursue further independent research on the collateral estoppel issue. After a thorough review of the summary judgment evidence and the law, the Court grants Plaintiff's motion for summary judgment, and declares that the debt evidenced by Plaintiff's state court judgment in the amount of $142,174 is nondischargeable pursuant to § 523(a)(6) of the Code.

Under 28 U.S.C. §§ 1334, and 157(a), and the Standing Order of Reference, this Court has jurisdiction over Debtors' bankruptcy case. This matter is a core proceeding requiring a determination of dischargeability. 28 U.S.C. § 157(b)(2)(J).

Before the Debtors' bankruptcy proceeding was filed, Raymond Crain ("Crain" or "Plaintiff"), former spouse of Debtor, Linda Joyce Limbaugh ("Limbaugh" or "Defendant"), filed suit in the County Court at Law No. 3 in Harris County, Texas (the "State Court") seeking damages arising from alleged violations of § 123.002 of the Texas Civil Practice and Remedies Code (the "State Court Action"). Specifically, Plaintiff alleged that Defendant had engaged in unauthorized wiretap activities to obtain an advantage in a separate family court proceeding initiated for the purpose of increasing court-ordered child support, and restricting parental visitation rights.

Throughout both the State Court Action and the family court matter, Defendant was represented by counsel. Defendant answered the State Court Action, admitting her conduct, but alleged several grounds of justification and asserted a counterclaim. As part of the State Court Action, Defendant's deposition was scheduled and taken by Plaintiff, but recessed after it was apparent Defendant had not fully complied with the subpoena duces tecum. After motion and hearing, Defendant was ordered by the State Court to reappear for deposition and produce documents previously withheld. The State Court warned that disobedience of the discovery order could result in sanctions, including the striking of Defendant's pleadings, pursuant to Rule 215(2)(b) Tex., R.Civ.Proc. (West 1993).

At a sanctions hearing held September 4, 1990, the State Court found Defendant had disobeyed the earlier order, struck Defendant's pleadings, and ordered a judgment in favor of Plaintiff on the issue of liability. Subsequently, on October 3, 1990, the State Court heard evidence on damages. Defendant participated in that hearing through counsel, and availed herself of the opportunity to cross-examine witnesses.

On October 24, 1990, the State Court signed an interlocutory judgment against Defendant (the "State Court Interlocutory Judgment"). (Plaintiff's Motion for Summary Judgment, Ex. I). As part of the State Court Interlocutory Judgment, the State Court found that Defendant engaged in unauthorized activity involving the unlawful interception and disclosure of oral communications under § 123 of the Texas Civil Practice and Remedies Code, and that Plaintiff was damaged as a result of such "intentional and deliberate acts" in the amount of $142,174, plus post-judgment interest. In additional findings entered November 27, 1990 (Ex. K), the State Court found that Defendant continued using information obtained from taped telephone conversations between Plaintiff and the couple's children in the family court pro-

ceeding, in violation of Chapter 123 of the Texas Civil Practice and Remedies Code, after having been admonished by the Family Court against doing so.

On October 31, 1990, the state court severed Defendant's counterclaim, and entered an order making the State Court Interlocutory Judgment a final judgment.

An appeal was taken from the final judgment; however, on June 27, 1991, by order of the 14th Judicial District Court of Appeals, the appeal was dismissed for want of prosecution.

Defendant filed a Chapter 7 bankruptcy petition on August 14, 1992. On November 9, 1992, Plaintiff filed an adversary proceeding seeking a determination that the judgment debt obtained in the State Court Action represents a "willful and malicious injury", and is non-dischargeable under § 523(a)(6) of the Code. Plaintiff has filed a motion for summary judgment asserting that the factual determinations made in the State Court Action bar relitigation of those issues relevant to a determination of dischargeability. In response, Defendant contends that issue preclusion is not warranted for the reason that the State Court default judgment, by its very nature, did not litigate or decide any issues.

▬ Though, generally, default judgments are not entitled to issue preclusive effect, exceptions exist where the quality, extensiveness and fairness of the procedures followed in the prior litigation are comparable to full adversary contests. 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4442 (1981); *Montana v. United States*, 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979). The term, "default judgment", has been used loosely to describe a variety of litigation ranging from one-sided prove up hearings, after default for failure to answer, to full-scale contests on the issue of damages, following a post-answer default.[1] Consideration of those

---

1. "Penalty" dismissals (*i.e.*, dismissals for failure to prosecute, or to comply with civil rules or any order of the court) form a category of default judgments, which operate as an adjudi-

cation upon the merits pursuant to Fed.R.Civ.P. 41(b), and establish claim preclusion. The purpose of Rule 41(b) is to establish a strong sanction to enforce compliance with proper proce-

procedural distinctions involved in prior litigation dictates that courts reject attempts to uniformly categorize default judgments where circumstances indicate some measure of preclusion is warranted.

In the instant case, the contested nature of the damages hearing held October 3, 1990, and the striking of Debtor's pleadings for discovery abuse established the default judgment as the product of a genuine adversary contest. This Court, therefore, finds that the $142,174 default judgment entered in the State Court Action meets the "actually litigated" prong of the issue preclusion test, and bars relitigation of the factual determinations made in the prior proceeding.

### Discussion

■ In *In re Stowell*, 113 B.R. 322 (Bankr.W.D.Tex.1990), Judge Kelly set out the analytical framework for deciding whether a prior judicial determination will bar discharge of the debt evidenced by the judgment. The test, which *Stowell* distilled from several Supreme Court decisions, including *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), involves a two-step process. The federal court is first required to look to state law to determine the preclusive effect of a prior state court judgment. 28 U.S.C. § 1738.[2] If preclusive effect would be given, then the federal court must determine if any exception to the full faith and credit statute applies under federal law.

### Texas Test for Collateral Estoppel

■ As a threshold matter, the Court must consider Texas law on issue preclusion. Under Texas law, Plaintiff must show:

(1) The facts involved were "fully and fairly litigated";

(2) The facts were essential to the prior litigation; and

(3) The parties were adversaries in the prior litigation.

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) (citing *Benson v. Wanda Petroleum Corp.*, 468 S.W.2d 361 (Tex.1971) and Restatement (Second) Judgments, § 27 (1982)). To meet the fully and fairly litigated requirement, an issue must be actually litigated. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985) (citing *Bonniwell, supra*) ("Once actually litigated and essential issues are determined, that issue is conclusive in a subsequent suit between the same parties").

■ Few bankruptcy courts have addressed whether, under state law, a default judgment meets the "actually litigated" prong of the issue preclusion test. *In re Stowell, supra; In re Turner*, 144 B.R. 47 (Bankr.E.D.Tex.1992). In the absence of any Texas precedent directly on point, bankruptcy courts have looked to § 27, comment (e) of the Restatement (Second) of Judgments for guidance, noting that Texas courts have relied on both § 27 of the Restatement and its official comments, in their attempt to apply the law. *Stowell, supra* at 329 (citing case law adopting § 27

dures. Restatement (Second) Judgments § 19, comment (e) and Reporters' Notes (1981); *In re Besing*, 981 F.2d 1488 (5th Cir.1993) (dismissal with prejudice by Texas state court of debtors' contract and tort claims against third party as sanction for discovery abuse was final judgment which operated to bar debtors from reasserting those claims); *In re Reed*, 861 F.2d 1381 (5th Cir.1988); *Logan v. First Bank of Houston, Tex.*, 736 S.W.2d 927 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.) (dismissal with prejudice is a discovery sanction constituting a judgment on the merits of a claim); *Mossler v. Shields*, 818 S.W.2d 752 (Tex.1991) (citing *Logan* approvingly). Discovery sanctions provide a common category of penalty dismissals. Penalty dismissals do not oftentimes adjudicate any issues, and therefore, are not typically entitled to issue preclusive effect. *Wood v. Several Unknown Metropolitan Police Officers*, 835 F.2d 340, 344 (D.C.Cir.1987); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4440, p. 365 (1981).

**2.** Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which those judgments emerged.

and comments).[3]

The Restatement recognizes that certain dangers exist in attaching preclusive effect to findings made as part of judgments entered by confession, consent, or default. First, the essential foundation of issue preclusion is oftentimes lacking for want of actual litigation or actual decision of any kind. Additionally, it is argued that a default judgment may be suffered for any number of valid reasons, other than the merits of plaintiff's claim. By contrast, however, once the defendant answers on the merits, a trial or summary judgment proceeding is required to determine all matters not admitted in the pleadings. Application of the doctrine of collateral estoppel is appropriate at that point, where the issues have been raised by the parties, submitted for determination, and resolved by the trier of fact. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4442, pp. 376–377 (1981). Restatement (Second) Judgments, § 27 comment (e) (1982).

Texas law distinguishes between three types of default judgments: default judgments as defined by Rule 239, Tex.R.Civ.P., where no answer has been filed [4]; a judgment *nihil dicit*, where no answer placing the merits of the case in issue is on file, though the defendant has entered a dilatory pleading [5]; and a post-answer default judgment, where the defendant has answered on the merits, but fails to appear at trial [6]. By filing an answer on the merits, defendant places all issues in dispute, thus requiring plaintiff to offer evidence and prove his case at trial, irrespective of whether defendant appears and participates.[7]

This State Court judgment most closely resembles a post-answer default judgment, in terms of the procedural safeguards afforded Defendant, and the opportunity for a full-scale trial on all issues remaining in dispute between the parties. *Frymire Engineering Co. v. Grantham, supra; Stoner, supra.*

Under Texas law, the State Court's power to render the default judgment as a discovery sanction did not include the right to remove the case from the jury docket, over objection (if a jury trial was request-

---

**3.** Restatement § 27, in comment (e), entitled "Issues Not Actually Litigated", states in pertinent part:

A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

\* \* \* \* \* \*

*In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.* Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the parties have entered an agreement manifesting such an intention. (Emphasis added).

**4.** *Edwards Feed Mill v. Johnson,* 158 Tex. 313, 311 S.W.2d 232 (1958).

**5.** *Spivey v. Saner–Ragley Lumber Co.,* 284 S.W. 210 (Tex.Comm.App.1926, judgment adopted); *O'Quinn v. Tate,* 187 S.W.2d 241 (Tex.Civ.App. 1945, writ ref'd).

**6.** *Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex. 1979); *Mullen v. Roberts,* 423 S.W.2d 576, 579 (Tex.1968).

**7.** *Maldonado v. Puente,* 694 S.W.2d 86 (Tex.Civ. App.—San Antonio 1985, no writ); *Karl and Kelly Co., Inc. v. McLerran,* 646 S.W.2d 174 (Tex.1983); *Stoner v. Thompson, supra; Frymire Engineering Co. v. Grantham,* 524 S.W.2d 680 (Tex.1975). 5 McDonald, *Texas Civil Practice* § 27.62 at 133 (Bancroft–Whitney 1992) ("A post-answer 'default' constitutes neither an abandonment of defendant's answer nor an implied confession of any issues thus joined by the answer. Judgment cannot be entered on the pleadings, but plaintiff in such a case must offer evidence and prove the case as in a judgment on a trial.")

ed), or the right to exclude Defendant from participating in the damages trial. *Rainwater v. Haddox*, 544 S.W.2d 729, 732–733 (Tex.Civ.App.—Amarillo 1976, no writ). Likewise, despite the fact Defendant's liability was determined by default, Plaintiff was required to establish through evidence that the degree and type of Defendant's misconduct warranted punitive damages. *Sunrizon Homes, Inc. v. Fuller*, 747 S.W.2d 530, 534 (Tex.App.—San Antonio 1988, writ den'd); *Metcalf v. Taylor*, 708 S.W.2d 57, 59 (Tex.App.—Fort Worth 1986, no writ). Furthermore, Defendant had the right to cross examine witnesses and to offer rebuttal testimony concerning damages and the causal connection between the damages and the alleged culpable conduct. *Fiduciary Mort. Co. v. City Nat. Bank of Irving*, 762 S.W.2d 196, 199 (Tex.App.—Dallas 1988, writ den'd); *see also, Maywald Trailer Co. v. Perry*, 238 S.W.2d 826, 827 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.). Once the defendant has made an appearance in the case, the defendant has the right to be notified of the trial on unliquidated damages, even after a default by sanctions. *Bass v. Duffey*, 620 S.W.2d 847, 850 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

If anything, this State Court judgment is entitled to greater weight than a post-answer default judgment (where a defendant did not appear) in that Plaintiff, in the present case, did not have the benefit of a trial at which the trial court could resolve all credibility issues in Plaintiff's favor, with no objection from an opponent. Defendant participated in all phases of the litigation, including the damages trial, cross-examined witnesses, and was permitted to offer evidence. Though liability was judicially admitted as part of the default judgment, the record reflects the trial court examined evidence which bore upon both liability and damages, and resolved both issues in Plaintiff's favor. (*See*, Plaintiff's Motion for Summary Judgment, Ex. H, Statement of Facts, pp. 5–19, 36–39; Ex. K, Findings of Fact and Conclusions of Law 1–4). As part of its punitive damages determination, the trial court necessarily considered the degree and type of Defendant's

misconduct. Given Defendant's vigorous opposition and the contested nature of the damages trial, the State Court litigation can hardly be characterized as a one-sided default prove-up. In 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4442, p. 376 (1981), it is stated: "... Preclusion is thus fully appropriate as to any issues resolved after a full-scale contest on issues of damages."

The issues determined in the State Court Action meet the general requisites for collateral estoppel. The procedures followed in the State Court Action were comparable in quality and extensiveness to those available in this Court, and the State Court was fully competent to render a determination on those issues.

### *Federal Test for Collateral Estoppel*

 The second part of the *Marrese* analysis requires this Court to determine whether federal law either expressly or impliedly repeals § 1738, so that a federal court would not be bound to follow the state rule of issue preclusion. Although an apparent conflict exists between 28 U.S.C. § 1738 and the federal bankruptcy court's exclusive power to determine issues of dischargeability, both the United States Supreme Court and the Fifth Circuit have upheld that issue preclusion may apply in the dischargeability context where the traditional tests for preclusion are met. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Matter of Shuler*, 722 F.2d 1253 (5th Cir.1984); *Matter of Allman*, 735 F.2d 863 (5th Cir.1984), *cert. den'd*, 469 U.S. 1086, 105 S.Ct. 590, 83 L.Ed.2d 700 (1984); *Matter of Poston*, 735 F.2d 866 (5th Cir.1984), *cert. den'd*, 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 700 (1984). As part of the "federal test", bankruptcy courts in this District are required to examine the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contained sufficiently detailed facts and findings to supply each of the elements of

a § 523(a) claim. *Shuler, supra* at 1255–1256.[8]

*Continental Can Co., U.S.A. v. Marshall*, 603 F.2d 590 (7th Cir.1979) provides guidance in interpreting the "actually litigated" requirement of collateral estoppel[9], declining to interpret the requirement expansively. The Seventh Circuit states:

> The requirement of collateral estoppel that the issue be 'actually litigated' does not require that the issue be thoroughly litigated. Collateral estoppel may apply 'no matter how slight was the evidence on which a determination was made, in the first suit, of the issue to be collaterally concluded.' 1B Moore's Federal Practice ¶ 0.441[2], at 3778 [sic] [727–728] (2d ed. 1974). This requirement is generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459–60 (5th Cir.), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *see generally*, Note, *The Collateral Estoppel Effect of Administrative Agency Actions in Federal Civil Litigation*, 46 Geo.Wash.L.Rev. 65, 68 (1977). Under this standard, the issue in the present case was actually litigated despite the imbalance in the quantity of evidence introduced. Any other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or by inadvertence, by denoting as irrelevant an issue clearly raised by his opponent and by refusing to introduce evidence on the issue.

*Continental Can Co., U.S.A. v. Marshall, supra* at 596. (Footnotes omitted).

The Seventh Circuit's analysis has been adopted, either tacitly or expressly, by several Bankruptcy Courts in evaluating what, if any, collateral estoppel effect a post-answer default judgment deserves. *In re Holzman*, 62 B.R. 218 (Bankr.S.D.Fla. 1986); *In re Dohm*, 19 B.R. 134 (N.D.Ill. 1982); *In re Sloan*, 1983 WL 35487, Bankr. L.Rep. ¶ 69,335 (E.D.N.Y.1983). *See also, In re Four Corners Enterprises, Inc.*, 17 B.R. 156 (Bankr.M.D.Tenn.1982).[10] In each instance, the courts were satisfied the prior judgment was entitled to preclusive effect where the parties to the original action disputed issues, and the trier of fact resolved them. The quantum of evidence introduced on any given point did not affect the court's analysis of whether an issue was "actually litigated". *In re Austin*, 93 B.R. 723 (Bankr.D.Colo.1988); *In re Day*, 137 B.R. 335 (Bankr.W.D.Mo.1992); *In re Herwig*, 77 B.R. 662 (Bankr.S.D.Ill. 1987).

■ In the instant case, the record submitted as part of the prior proceedings (including certified copies of the pleadings, judgment, discovery responses, trial transcript, and findings of fact) demonstrates

---

8. Under the federal test for collateral estoppel, a party seeking to preclude relitigation of an issue must prove three elements: (1) that the issue at stake is identical to the one involved in the prior litigation; (2) that the issue had been actually litigated in the prior proceeding; and (3) that the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action. *White v. World Finance of Meridian, Inc.*, 653 F.2d 147, 151 (5th Cir.1981).

9. The Fifth Circuit has not decided whether default judgments meet the "actually litigated" requirement of collateral estoppel, though the *Shuler* court held that a prior state court default judgment may preclude relitigation of subsidiary facts actually litigated and necessary to the prior decision. *Shuler*, 722 F.2d at 1255.

10. Most recently, the Third Circuit, in *In re Braen*, 900 F.2d 621 (3rd Cir.1990), *cert. den'd*,

498 U.S. 1066, 111 S.Ct. 782, 112 L.Ed.2d 845 (1991), consistent with *Continental Can*, declined to interpret the "actually litigated" requirement of collateral estoppel broadly. The Third Circuit held the "actually litigated" requirement of collateral estoppel had been met by the prior judgment, despite the fact the debtor, in a subsequent bankruptcy dischargeability proceeding, argued that he was too ill at the time of the earlier suit to rebut the plaintiff's charges, and that his attorney acted negligently by failing to examine important documents and neglecting to make helpful arguments at trial. The Third Circuit rejected the debtor's attempt to relitigate his case, finding no evidence existed which outweighed the extremely important policy underlying the doctrine of collateral estoppel—that litigation of issues at some point must come to an end.

that Plaintiff previously litigated issues identical to those involved in a § 523(a)(6) proceeding; alternatively, the record supplies the type of subsidiary factual detail which the Fifth Circuit has held would support giving preclusive effect to the State Court judgment.

As part of Defendant's answers to Plaintiff's request for admissions (Plaintiff's Motion for Summary Judgment, Ex. C), Defendant admitted that she never informed Plaintiff that phone conversations between Plaintiff and the couple's children were being recorded, and at no time was his permission obtained. (Ex. C, Responses to Requests for Admissions 4–5, 8, 13–14). The testimony introduced at the damages trial supported findings that Defendant acted deliberately, without just cause or excuse, and, by her conduct, caused harm to Plaintiff. The record reflects that, based on the unauthorized tape recordings, one of Plaintiff's children was indefinitely committed to a mental hospital, and Plaintiff was denied access to the couple's three other children. Thereafter, Defendant filed suit in family court seeking increased child support and to restrict Plaintiff's parental visitation rights. As a result of the use of the unauthorized tape-recorded conversations, and the commencement of the family court proceeding, Plaintiff and the children were required to undergo psychological and social counseling. The State Court interlocutory judgment found Plaintiff entitled to damages in the amount of $142,174 as a result of Defendant's "intentional and deliberate acts." Based on the testimony adduced at trial, the State Court found a continuous course of conduct on Defendant's part to violate Chapter 123, Tex.Civ. Prac. & Rem.Code.[11]

Section 523(a)(6) denies discharge for willful and malicious injury by the debtor to another entity or to the property of another entity. The first element, the requirement of "willfulness", has been defined in the legislative history as meaning intentional or deliberate conduct. *In re Gaebler*, 88 B.R. 62 (E.D.Pa.1988); *In re Hallahan*, 78 B.R. 547 (Bankr.C.D.Ill.1987), *aff'd*, 113 B.R. 975 (C.D.Ill.1990), *aff'd*, 936 F.2d 1496 (7th Cir.1991); H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 365 (1977) *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. The requirement of malice is met by evidence that Debtor committed a wrongful act consciously and knowingly, in the absence of just cause or excuse.

In considering dischargeability issues, courts have differed over whether the focus under § 523(a)(6) should be the Debtor's intent to produce the injury, or the intent to perform the act which gives rise to the injury.[12] A significant majority of the courts, including the Fifth Circuit, have

---

11. The damages awarded as part of the State Court Judgment break down as follows:

| | |
|---|---:|
| Attorneys' fees incurred in defending Family Court action | $ 26,409.67 |
| Dr. Silverman, court-appointed psychiatrist | $ 2,200.00 |
| Dr. Fason, court-appointed psychiatrist | $ 6,800.00 |
| Dr. Altschuler, court-appointed psychiatrist | $ 3,265.00 |
| Court reporter fees | $ 3,500.00 |
| Mental anguish | $ 25,000.00 |
| Punitive damages | $ 50,000.00 |
| Attorney fees incurred in bringing State Court Action | $ 25,000.00 |
| Total damages | $142,174.67 |

12. *Cassidy v. Minihan*, 794 F.2d 340, 343–344 (8th Cir.1986) (it is the injury to the creditor that must have been intentional, not the act of the debtor which caused the injury); *contra, In re Cecchini*, 780 F.2d 1440, 1442–1443 (9th Cir. 1986) (willful and malicious refers to a wrongful, intentional act which necessarily causes injury, even absent proof of the specific intent to injure); *In re Adams*, 761 F.2d 1422, 1427 n. 5 (9th Cir.1985) (proof that the debtor had knowledge of the probable consequences of his voluntary act is not necessary in order to show willfulness and malice); *In re Erickson*, 89 B.R. 850, 853 (Bankr.D.Idaho 1988) (the focus is not on the intent to produce the injury, but on the intent to perform the act which gives rise to the injury).

held that § 523(a)(6) merely requires an intentional act by the debtor which results in injury to the creditor. *Matter of Quezada,* 718 F.2d 121 (5th Cir.1983), *cert. den'd,* 467 U.S. 1217, 104 S.Ct. 2662, 81 L.Ed.2d 368 (1984); *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241 (5th Cir.1983); *In re Dean,* 79 B.R. 659 (Bankr.N.D.Tex.1987).

The facts established in the State Court Action, bar relitigation of the issue of whether Defendant's conduct in making unauthorized tape recordings of phone conversations, constitutes a "willful and malicious injury". The issues involved in the State Court Action, the evidence introduced at the damages trial, and the findings made by the trial court, overlapped the elements of a § 523(a)(6) action on all points. In the State Court Action, Plaintiff pleaded and proved that Debtor acted deliberately and intentionally in intercepting and disclosing oral communications between Plaintiff and his children, and, by her actions, caused injury to Plaintiff. In awarding damages based on violation of § 123.004, Tex.Civ. Prac. & Rem.Code, the State Court necessarily found that the Debtor acted intentionally, and that her actions resulted in injury to Plaintiff. Given the identity of the underlying fact issues, the State Court record of tortious conduct conclusively establishes that the State Court judgment is not dischargeable under § 523(a)(6).

Additionally, the Court finds that the punitive damages and attorney fees flowing from the non-dischargeable debt are also excepted from discharge. *In re Harper,* 117 B.R. 306 (Bankr.N.D.Ohio 1990); *In re Horowitz,* 103 B.R. 786, 790 (Bankr.N.D.Miss.1989); *In re Dean, supra* at 663; *In re Adams, supra; In re Siefke,* 61 B.R. 220 (Bankr.D.Mont.1986). Attorney fees, based on either an underlying agreement or statute, and awarded as part of a prior judgment, are non-dischargeable under § 523(a). *Matter of Jordan,* 927 F.2d 221 (5th Cir.1991); *In re Luce,* 960 F.2d 1277 (5th Cir.1992); *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987); *Matter of Church,* 69 B.R. 425 (Bankr.N.D.Tex. 1987); *In re Johnson,* 120 B.R. 461 (Bankr. N.D.Ill.1990); *In re Fitzgerald,* 109 B.R.

893 (Bankr.N.D.Ill.1989). Texas law provides creditors, such as Plaintiff, with a right to attorney fees resulting from violations of § 123.002 Tex.Civ.Prac. & Rem. Code. *See,* Tex.Civ.Prac. & Rem.Code, § 123.004(5) (Vernon 1986). As a matter of law, Plaintiff's attorney fees incurred in the State Court Action are non-dischargeable.

Judgment will be entered in accordance with the foregoing opinion.