In re Jackie Dwayne O'NEILL, Debtor.

Viking Dynamics Limited, Plaintiff,

v.

Jackie Dwayne O'Neill, Defendant.

Bankruptcy No. 99–42772–S.
Adversary No. 99–4122.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 12, 2001.

**124**

R. Spencer Shytles, Graham, Bright & Smith, P.C., Dallas, TX, for plaintiff.

Joseph D. McNeff, McKinney, TX, for defendant.

### MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the Complaint To Determine Dischargeability of A Debt ("Complaint") filed by Viking Dynamics Limited, the Plaintiff in this adversary proceeding ("Viking"). The Court considered the pleadings filed, the argument of counsel, the evidence adduced at trial and the record in this case. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Jackie Dwayne O'Neill (the "Debtor" or "O'Neill") filed a voluntary petition under Ch. 7 on August 30, 1999. This adversary proceeding was initiated by the filing of the Complaint To Determine Dischargeability of A Debt pursuant to 11 U.S.C. § 523(a)(2). Viking claims that the Debtor is indebted to it in the amount of $145,000 plus interest attorneys fees and costs for obtaining property by false pretenses, false representations and/or actual fraud.

The transaction giving rise to the Complaint occurred in 1995. In 1995, the Debtor and Aubrey J. Bowles, d/b/a as Open Medium Transmission Video Systems of Texas ("Old OMTV"), entered into a partnership with Viking pursuant to an agreement dated September 8, 1995 entitled Articles of Association ("AOA"). Under the agreement, Viking would fund up to $300,000.00 to launch the business activities of a new corporate entity to be known as OMTV Systems, Inc. ("OMTV, Inc.") and Old OMTV would provide both expertise and technology and would be responsible for administration and operation of the new corporate entity. In consideration for the funding, Viking would receive a minority shareholder's interest in OMTV, Inc., in the amount of 30% of the initial 1 million shares. Attached as an addendum to the AOA, is a Marketing Plan which includes an itemized list entitled "Existing Potential Contracts and Sales Projections". The list contains a description of 14 potential contracts, the revenue anticipated from each and a date in late 1995 or early 1996. The list includes Old OMTV's sole existing contract as of the date of the execution of the AOA, a contract with the City of Richardson, in the amount of $442,500.00.

Viking provided OMTV, Inc., $145,000.[1] None of the other contracts listed on the

---

1. Viking advanced OMTV, Inc., $145,000 in the form of one initial payment of $45,000

addendum came to fruition. Viking refused to advance further funds and the business closed in Spring 1996.

Thereafter, Viking filed a lawsuit against the Debtor, individually, Bowles, individually, and OMTV, Inc., in the District Court of Collin County, Texas. The Debtor counterclaimed for breach of contract alleging that the business failed due to Viking's failure to fund the additional $155,000 contemplated in the AOA. The matter was referred to the International Chamber of Commerce in London's Court of Arbitration ("ICC") in accordance with the terms of Article 13 of the AOA, which provided for binding arbitration in the event of an insoluble dispute between the parties. The ICC conducted a two day hearing on the merits and entered an award ("Final Award") in favor of Viking against the Debtor. The ICC did not grant an award against Bowles or OMTV, Inc. The Debtor's counterclaims against Viking for breach of contract were denied. Specifically, ICC made findings of negligent misrepresentation under the law of the State of Texas and awarded Viking $145,000 plus ten percent (10%) interest beginning October 3, 1996 together with attorney fees of $29,070.00 and arbitration costs of $23,500.00. The Debtor filed his petition for relief under the Bankruptcy Code shortly thereafter and Viking initiated the instant adversary.

Viking's Complaint seeks this Court's entry of an order finding that its claim against the Debtor in the amount of $145,000.00 plus attorneys fees and costs is non-dischargeable and seeks a judgment in such amounts. The basis of Viking's claim is the unconfirmed Final Award rendered by ICC. Specifically, Viking alleges that the Debtor obtained funding from them by false pretenses, false representations and/or actual fraud which would except the

debt from discharge under 11 U.S.C. § 523(a)(2). The Debtor counterclaimed for breach of contract and seeks compensatory damages, attorneys fees and costs. Both parties asserted that there was collateral estoppel or issue preclusion effect to be given to the arbitration award. However, they saw the effect of the arbitration award considerably differently. Defendant argued that the finding of negligent misrepresentation by the arbiter and the rejection of the other claims was tantamount to a finding that there was no fraud and no false misrepresentation and therefore, that Plaintiff was collaterally estopped from pursuing that issue in this Court. On the other hand, Plaintiff contends that the arbitration award clearly rejects Defendant's counter-claim for damages but does not reject the false representation and fraud claims. Plaintiff argues that the arbitration award specifically determined that false representations were made and that it relied on those false representations in advancing the money.

Although each party raised the issue of collateral estoppel and asserted that the doctrine supported their position in the case, neither party objected to the other going forward and presenting evidence to this Court just as if no prior proceeding had been conducted. Although this Court does not hold that their conduct constitutes an abandonment of their claim of collateral estoppel, it does hold that it cannot simply ignore the evidence offered at trial and resolve this case on whether or not one side is entitled to rely on the arbitration findings but must consider the entire record before it. The Final Award was placed into evidence as Plaintiff's Exhibit 4 and therefore, will be considered by this Court in conjunction with all other evidence and argument presented at trial.

followed by five installment payments of $20,000.

The matter came before the Court pursuant to regular setting and, after trial, was taken under advisement.

## DISCUSSION

■■■ The doctrine of collateral estoppel applies in discharge exception proceedings. *Sheerin v. Davis (In re Davis)*, 3 F.3d 113, 114 (5th Cir.1993), citing *Grogan v. Garner*, 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 658 & n. 11, 112 L.Ed.2d 755 (1991). Accordingly, this Court must determine the weight to be given the unconfirmed arbitration award before it can examine whether the elements necessary to support a claim of non-dischargeability under § 523(a) have been met. 11 U.S.C. § 523 should be strictly construed against the objecting creditor and liberally construed in favor of the debtor.[2] *Matter of Cross* 666 F.2d 873 (5th Cir.1982) The burden of proof is on the creditor, which must prove its case by a preponderance of the evidence.

### Collateral estoppel effect of arbitral findings.

■■■ The issue of whether findings in an unconfirmed arbitration can be final for issue preclusion purposes is not an issue of first impression. In *In re Marx*, 171 B.R. 218 (Bkrtcy.N.D.Tex.1994), the Bankruptcy Court found that an unconfirmed[3] arbitration award collaterally estopped the debtor from denying the applicability of the discharge exception for willful and malicious injury. Although the *Marx* Court relied partly upon California law, its rationale applies in the instant case. A prior state-court judgment may bar discharge of the debt evidenced by that judgment if (1) the law of the state where the judgment was rendered would give preclusive effect to the judgment and (2) under federal law, no exception to the full faith and credit statute, 28 U.S.C. § 1738, applies. *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 956 (Bankr.N.D.Tex.1993), citing *Cardenas v. Stowell (In re Stowell)*, 113 B.R. 322 (Bankr.W.D.Tex.1990). Other relevant considerations are whether the record of the prior proceeding meets the federal test for the application of collateral estoppel; whether the prior proceeding was conducted in such a manner as to predetermine dischargeability issues; and whether each component of the judgment debt should be excepted from discharge. *In re Marx, Ibid.* at 220–21 citing to *Haile v. McDonald (In re McDonald)*, 73 B.R. 877, 879–80 (Bankr.N.D.Tex.1987); *Dodson v. Church (Matter of Church)*, 69 B.R. 425 (Bankr.N.D.Tex.1987).

■■■ The first element requires the Court to refer to Texas law. Texas law is clear. A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were

---

2. The exception to the rule is § 523(a)(5) which deals with child support.

3. Title 9 of the U.S.Code provides at 9 U.S.C.A. § 9 for a party to the arbitration to apply to the court for an order confirming the award. Such an award may only be vacated upon the application of any party to the arbitration—

(a) (1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
9 U.S.C.A. § 10. The award before this Court, though unconfirmed, has not been challenged by either party.

essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984) citing to *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971).

The Fifth Circuit has determined what constitutes a "fully and fairly litigated trial for purposes of collateral estoppel". See, e.g. *Kenneth L. Pancake v. Reliance Insurance Co. (In re Pancake),* 106 F.3d 1242 (5th Cir.1997) and *Garner v. Lehrer (In re Garner),* 56 F.3d 677 (5th Cir.1995). Although *Garner* deals with different facts, i.e. a default judgment, it was the *Garner* case that articulated the applicability of the aforementioned three element test in bankruptcy cases involving dischargeability. The *Garner* Court, citing to *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816 (Tex.1984), held that where a court enters a default judgment after conducting a hearing or trial *at which the plaintiff meets his evidentiary burden,* the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes. The *Pancake* case involved a stricken answer rather than a default due to failure to answer. Regardless, the *Pancake* court ruled that if the creditor could "produce record evidence demonstrating that the state court conducted a hearing at which [the creditor] was put to its evidentiary burden, collateral estoppel may be found appropriate." *Pancake, supra* at 1245.

The ICC Arbitration's Final Award (Plaintiff's Ex. 4) attests: "A hearing on the merits was held February 15 and 16, 1999, in Dallas, Texas." Further, it refers to the parties' respective arguments, evidence and testimony by O'Neill. In addition, at the trial on the Complaint, the Debtor made it clear to this Court that he does not challenge the final and binding effect of the arbitration. Accordingly, this Court finds that at the arbitration hearing, the parties appeared, a hearing was conducted and evidence was proffered. Therefore, this Court must conclude collateral estoppel is appropriate in this case because Texas law would give the arbitration award preclusive effect: the three *Bonniwell* elements have been met, i.e. (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action as judicially defined in the Fifth Circuit jurisprudence; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Further, this Court must conclude collateral estoppel is appropriate in this case because the two prongs of the *Crain v. Limbaugh* test have been met. No evidence has been adduced which would indicate that this matter should be excepted from being afforded full faith and credit.

■ Given the foregoing findings and conclusions, this Court must also find that the record of the prior proceeding meets the federal test for the application of collateral estoppel. Fifth Circuit law is clear on collateral estoppel. The Fifth Circuit's requirements for application of collateral estoppel are:

(1) That the issue under consideration be identical to the issue previously litigated;

(2) That the issue was fully and vigorously litigated in the prior proceeding;

(3) That the previous determination of the issue was necessary for the judgment in the prior proceeding; and

(4) That no special circumstances exist that would render preclusion inappropriate or unfair.

*Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131, 1136 (5th Cir. 1991). The first three elements have been satisfied as discussed hereinabove. As to the fourth element, no special circum-

stances were plead by either party that would render preclusion inappropriate or unfair. The record of the hearing clearly demonstrates that neither party challenges the binding nature or finality of the arbitrator's finding of "negligent misrepresentation" or other findings.

Next, this Court must "examine the judgment rendered in the prior proceeding, together with the subsidiary facts actually litigated and necessarily decided, to determine whether the record contained sufficiently detailed facts and findings to supply each of the elements of a § 523(a) claim." *Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 956 (Bankr.N.D.Tex. 1993).

11 U.S.C. § 523 titled "Exceptions to discharge" provides: (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—. . . .

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with an intent to deceive; . . . .

See *11 U.S.C. § 523(a)(2)*.

The Court has reviewed the ICC Arbitration Final Award (Plaintiff's Exhibit 4). It shows that Viking made eleven claims against the Debtor for fraud, breach of contract, negligent misrepresentation, usurpation of corporate opportunity, violation of the Texas Deceptive Trade Practices Act and/or violation of the Texas Securities Act. Only Viking's allegations of fraud and negligent misrepresentation are pertinent to the issue of whether the Viking debt may be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2) as plead in the Complaint. All claims against the Debtor by Viking for fraud were rejected by the ICC. However, the ICC found two claims of negligent misrepresentations.

■■■■ Viking claimed that by attaching Addendum #1 to the AOA the Debtor represented that the entities listed therein constituted potential contracts. The ICC sustained the claim as a negligent misrepresentation. Based upon the testimony it heard, the ICC found that the Debtor knew the list was inaccurate at the time the AOA was signed, but failed to inform Viking. The ICC also concluded that the Debtor's representations to Viking with respect to whether the OMTV system was patentable were false and that Viking relied on the misrepresentations in signing the AOA and in investing the $145,000.00. (Final Award at Para. 10, Page 15.) Insofar as the ICC found negligent misrepresentation[4] and given that proof of false

---

4. To establish a cause of action for negligent misrepresentation, there must be proof of the false representation of an existing fact. *See Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App.—Austin 1997, no writ). The elements of negligent misrepresentation are: (1) the defendant supplied false information in the course of its business, profession, employment, or any other transaction in which it had a pecuniary interest; (2) the defendant supplied the information to guide others in their business transactions; (3) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information;

representation is elemental to such finding, this Court must read the Final Award as a finding that the Debtor made false representations to Viking. Further, even were this Court to disregard the findings of the ICC, which it does not do, the testimony presented at the trial on the Complaint together with the documentary evidence adduced, persuade this Court that the Debtor made false representations to Viking to obtain the funding it received from Viking. The Court found no indicia that the Debtor ever intended to create a new separate, identifiable business entity with Viking. The list of contracts that were represented as future business in hand was false. It was a list that the Debtor created for the express purpose of inducing Viking to invest its money. There had been no previous arrangement with those customers and certainly no contracts in place. The testimony of witnesses and the actions of the parties surrounding the execution of the AOA, convince this court that the Debtor's promises to Viking to obtain the initial funding were made without an intent to perform such that the promises were knowingly false and rise to the level of culpability required by § 523(a)(2). See *In re Hunt,* 30 B.R. 425, 437 (M.D.Tenn., 1983) citing to *H.C. Prange Co. v. Schnore,* 13 B.R. 249 (Bkrtcy.W.D.Wis.1981).

This Court agrees that the counter-claim must be and is rejected.

*Attorneys' fees and costs.*

Viking's Complaint seeks attorneys fees and costs in addition to the award of $29,070 in attorneys' fees granted in the Final Award.[5] It is clear that an award of attorney fees requires the trial court to evaluate and explain that award of attorney fees in light of the "Lodestar" approach and any adjustment to the "Lodestar" amount pursuant to the "Johnson" factors. Failure to do so is reversible error. *U.S. Leather, Inc. v. H. & W. Partnership,* 60 F.3d 222 (5th Cir.1995). In this matter, this Court has insufficient evidence upon which it can award attorneys fees not previously granted by the ICC in the Final Award. Accordingly, the request for additional attorney fees and costs must be denied.

### CONCLUSION

 Given that the findings of the arbitration panel have preclusive effect, and that this Court makes basically the identical findings on the evidence presented this Court must conclude that the Debtor obtained money, in the amount of $145,000, by a false representation, or false representations, and that such debt is non-dischargeable under § 523 of the Bankruptcy Code. The Court further finds the ICC's award of simple interest at 10% per annum beginning October 3, 1996, together with attorneys' fees of $29,070 and arbitration costs of $23,500 to be non-dischargeable because they flow from the

---

and (4) the plaintiff suffered pecuniary loss proximately caused by its justifiable reliance on the misrepresentation. In order to establish a cause of action for negligent misrepresentation, however, there must be proof of the false representation of an existing fact, not the breach of a future promise. *See Williams v. City of Midland,* 932 S.W.2d 679, 684 (Tex. App.—El Paso 1996, no writ h.); *Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 294 (Tex.App.—El Paso 1992, writ denied). *See also Federal Land*

*Bank Ass'n of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991); *C & C Partners v. Sun Exploration and Production Co.,* 783 S.W.2d 707, 718–19 (Tex.App.—Dallas 1989, writ denied).

5. The ICC found attorneys' fees in the amount of $29,070 to be "reasonable and necessary", and ordered such amounts and arbitration costs paid. *Plaintiff's Exhibit 4 (Final Award), p. 18.*

non-dischargeable debt.[6] The request for additional attorneys' fees and costs in connection with the adversary proceeding was unsupported and must be denied. An order will be entered accordingly.

---

6. *In re Christian,* 111 B.R. 118, 123 (Bkrtcy. W.D.Tex.,1989) citing to *Bell v. Bell (In re Bell),* 5 B.R. 653 (Bankr.W.D.Okla.1980), *Prudential Bache Sec. v. Rechichi (In re Rechichi),* 105 B.R. 726, 729 (Bankr.S.D.Fla.1989); *Lawter Int'l Inc. v. Pryor,* 93 B.R. 517 (Bankr. S.D.Tex.1988); *Chambers v. Chambers (In re Chambers),* 36 B.R. 42, 46 (Bankr.W.D.Wis. 1984) ... (quoting *In re Sposa,* 31 B.R. 307, 310 (Bankr.E.D.Va.1983)); *Builders Lumber* *& Supply Co. v. Fasulo (In re Fasulo),* 25 B.R. 583, 585 (Bank.D.Conn.1982) *Jennen v. Hunter (In re Hunter),* 771 F.2d 1126, 1131 (8th Cir.1985). See also *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341, 12 Tex.Bankr.Ct.Rep. 163 (1998). See also, *Stokes v. Ferris (In re Stokes),* 150 B.R. 388, 393 (W.D.Tex.1992), aff'd, 995 F.2d 76 (5th Cir.1993).